GLINN'S ADM'R

*v.*

GLINN AND OTHERS.

(*Special Court of Appeals of Virginia, February, 1882.*)

[Virginia Law Journal, 1882, p. 116.]

**Wills—Construction of—Case at Bar.**

A testatrix's will contained the following provisions: "I lend to my daughter, Mary Roads, who intermarried with German R. Glinn, one equal sixth part of my estate during her natural life." And after similar bequests to each of her other five children, she disposes of the remainder of her estate as follows: "Now, if either of my children hereinbefore named, shall die, leaving an heir or heirs of their body, to such heir or heirs, if there be more than one, I give that portion of my estate hereinbefore loaned, to them and their heirs forever. But if either of my named children shall die leaving no heir of their body, then, in that case, the portion of my estate herein loaned to such child or children shall pass to my surviving children in equal proportions, to be held by them during their natural life or lives, and at their death to their heirs in fee simple." The daughter, Mary Roads, died before her husband, leaving children; and in a suit by the children against the administrator of the husband, to recover the estate, consisting of money and slaves, and the interest and hires thereof, which was left their mother by the will, from the time of her death.

> *Held* : The daughter, Mary, took only a life estate, and at her death her children took as purchasers under the will of the testatrix, and are entitled to recover.

**Use of Children's Property by Father—Compound Interest—Case at Bar.**

Inasmuch as there was doubt of the father's ability to support the children, independently of the hires of the slaves, and as he held them under a *bona fide* belief that they were his property,

he should not have been charged with the whole of the conjectural hires, with compound interest thereon, as a guardian, but there should have been an abatement in his favor of at least one-half of the hires of the slaves of those of the children, who remained with and were supported by him during their minority, for such time as they remained with and were supported by him.

This was an appeal from a decree pronounced by the circuit court of Hanover, in a chancery suit, in which Wm. R. Glinn, Peter D. Glinn, German R. Glinn, Jr., and Araminta Glinn, children of German R. and Mary Roads Glinn, his wife, were plaintiffs, and William N. Waldrop administrator of said German R. Glinn, deceased, and Wm. Smith individually and as executor of Celia Smith, deceased, who was the mother of Mary Roads Glinn, deceased, were defendants. The facts of the case are sufficiently stated in the opinion of the court.

*Geo. W. Richardson* and *White & Holliday*, for the appellants.

*Griswold, Winn* and *J. B. Young*, for the appellees.

Wingfield, P., delivered the opinion of the court.

This is a suit by the children of Mary Roads Glinn, deceased, against the administrator with the will annexed, of their father, German R. Glinn, deceased, to recover a sum of money and the hires of certain slaves, which came to the hands of the said German R. Glinn, deceased, in his lifetime from the personal representative of Celia Smith, deceased, in right of his wife, Mary Roads Glinn, under the will of the testatrix.

Celia Smith, by her will, which was dated the 9th of March, 1839, and admitted to probate in November of the same year, disposed of her estate, in the first place, by six distinct bequests to each of her six children, using the same

exact words in each. It will suffice to cite the terms of the bequest to Mrs. Glinn, which is in the following words, viz.: "I lend to my daughter, Mary Roads, who intermarried with German R. Glinn, one equal sixth part of my estate during her natural life," and after, the other five similar bequests to each of her other five children, she disposes of the remainder as follows: "Now, if either of my children, hereinbefore named, shall die, leaving an heir or heirs of their body, to such heir or heirs, if there be more than one, I give that portion of my estate, hereinbefore loaned, to them and their heirs forever. But if either of my named children shall die leaving no heir of their body, then, in that case, the portion of my estate herein loaned to such child or children shall pass to my surviving children in equal proportions to be held by them during their natural life or lives, and at their death to their heirs in fee simple."

In the division of the estate of the testatrix, in 1840, German R. Glinn received at the hands of her executor, in right of his wife, $163.79 in money and two slaves, subject to a charge of $16.66 on the slaves in order to equalize the division, and held them until his death, claiming them as his own.

Mrs. Glinn died in August, 1841, and German R. Glinn in August, 1856, and this suit is brought to recover the hires of the slaves and the money, with interest, from the time of her death, and the right of the appellees to recover depends upon the proper construction of the will of Celia Smith.

The circuit court held that Mrs. Glinn took only a life interest in the property bequeathed to her, and at her death it belongs to the appellees, and held that German R. Glinn, their father, should account to them for the money and the hires of the negroes so received by him, with compound interest, as a guardian would be accountable under similar circumstances. From this decision the administrator of German R. Glinn obtained an appeal.

The appellants' counsel assign as error, for which the decision of the circuit court ought to be reversed : First and mainly, That that court put an erroneous construction upon the will of Celia Smith. Because, under it "German R. Glinn, in right of his wife, took a fee simple in the slaves in question, liable to be defeated by her dying without issue ; but as she died with issue, the fee simple never was defeated, and that under the rule in Shelley's case, the words "heirs of her body," as used by the testatrix, were words of limitation and not words of purchase, and consequently the slaves were his own in right of his wife, and he was not accountable to the appellees for their hires.

2d. But if he only took an estate in them for the life of his wife, he ought not to have been charged with their hires, because he supported and educated the appellees, which he was not of ability to do of himself without those hires, and that the use and profits of the slaves were necessarily expended in the support of his children (the appellees).

There are some other minor objections to the accounts taken in the case which under the view I have taken of it, need not be noticed.

On the other hand, it is contended by the counsel for the appellees that Mrs. Glinn took only a life estate under the will of Celia Smith, with a contingent remainder to her children, and an executory devise over well limited to the surviving children of the testatrix ; or else she took a fee tail by implication converted by the act 1776 into a fee simple, with an executory devise to her children well limited, according to the act of 1819 ; and in either case the appellees took the property upon the death of Celia Smith.

This case again brings up for decision in this court the vexed question in regard to the application of the rule in Shelley's case, upon which the legal profession have been divided ever since the decision of the celebrated case of Per-

rin v. Blake, in the time of Lord Mansfield, down to the present. All of the authorities, from the time of that decision down to the case of Moore, &c., v. Brooks, in 12 Gratt. 135, and many of the elementary works on real estate, have been cited and commented upon by the counsel on one side or the other in their arguments. I have examined the author ities cited pretty carefully, and I think they very clearly settle, that in a gift to one for life and to the heirs of his body, that the words "heirs of his body" are words of limitation and not words of purchase, and give to the first taker an absolute estate, unless there is something in the instrument creating the estate to shew that the donor or testator did not intend to use them in their technical, primary sense.

But there is another class of cases running down from the case of Read v. Snell, 2d Atk. 642, in the time of Lord Hardwicke, to the case of Wootton v. Wootton's ex'or, 2d Pat. & Heath 494 (decided two years after the case of Moore, &c., v. Brooks, so much relied on by the counsel for the appellant), which establish the doctrine as laid down by the elementary writers (see 4 Kent's Com. 241–2, and the other writers referred to by him) that where the testator annexes words of explanation to the word "heirs," shewing thereby that he meant a mere description of persons or specific definition of certain individuals, or where he superadds words of explanation, or fresh words of limitation, and a new inheritance is grafted on the heirs to whom he gives the estate, shewing that he intended that the heirs should be a new stock of a new descent—in all such cases it has been held that the word "heirs" was merely descriptive of the person that he intended to take, and were words of purchase, and not words of limitation.

I think the bequest in this case falls within the influence of the latter class of cases, and that the appellees, upon the death of Mrs. Glinn, took the property loaned or given her

for life as purchasers under the will of Celia Smith, dec'd. I think it manifestly appears that the testatrix used the words "heirs of her body" in the sense of children or descendants. I think no one can read the will without seeing that it was the plain intention of the testatrix to give the use of the property to her daughter (Mrs. Glinn) for life, and at her death to her children then living (she adds words of inheritance to her heirs [children]), and if she should die without any child living, then over to the surviving children of the testatrix for life, with remainder to their children (and here again she adds words of inheritance to the remainder over to the "heirs"—meaning children—of the surviving children of the testatrix), and that she manifestly looked to the death of her daughter as the time when the gift to her grandchildren was to take effect, or in case of her dying without issue living for the remainder over to become effectual, and that she did not contemplate an indefinite failure of issue.

This, as I think, being the plain meaning of the testatrix, it is the duty of the court in this (as well as in all other cases involving the construction of wills) to carry her intentions into effect, if it is lawful. . The case of Wootton v. Wootton's ex'or is almost identical with this. In that case the devise was as follows: "I loan to my two grandsons, Willis and Thomas Wootton, my tract of land, &c., during their natural lives, and in case they should die leaving lawfully begotten heir or heirs of their body, I give the property loaned to such heir or heirs. But in case either of them should die leaving no such heir, I give the property loaned them to my grandson, Benj. Wootton, to him and his heirs forever." In the case of Self's adm'r v. Tune, 6 Munf. 470, the donor gave to his daughter and her husband certain slaves "during their natural lives, and at the death of the longest liver of them both, to be equally divided among the heirs of her body, and in default of such heirs to be returned and equally divided between the heirs of the donor's other

daughter, and their heirs and assigns forever." So in the case of Didlake v. Hooper, Gil. 194. The devise or loan was to the testator's son "for and during his natural life, and if he should have lawful issue, I give the land and negroes to them at his death, and if he should die without issue, I give the whole of the property that I have loaned to him to S. and J. ;" and so in all the other cases following Read v. Snell, held not to come within the rule of Shelley's case. There was either a new inheritance grafted upon the heirs to whom the estate was given, or a limitation over upon the failure of issue of the first taker, or other equivalent terms used shewing that the heirs were not to take by descent from the parent, but to take the remainder direct from the donor or testator.

But in Moore, &c., v. Brooks, and the other cases decided in our court of appeals, as coming within the rule in Shelley's case, in general (if not in every case) there were no words shewing an intention to graft a new inheritance on the heirs, and in no instance was there a limitation over on the failure of issue, except in the case of Wilkins v. Taylor, 5 Call 150, which arose under a will before 1819, where the limitation over was held to be void for remoteness, and but for that would then have been held to be good, and would now unquestionably under the act of 1819 be held to be a good limitation.

In the case of Moore, &c., v. Brooks there were neither words of inheritance grafted on the heirs or a limitation over on the failure of issue. But the devise was to his two daughters, "to be held by them during their natural lives, and no longer, and then equally divided between their heirs lawfully begotten;" and Judge Allen, in delivering the opinion of the majority of the court, lays stress on the fact that in that case there was no limitation over on the failure of issue. If that case had been like this, it is evident from his

reasoning it would have been decided in favor of the children of the first taker as purchasers under the will.

I think, therefore, that the circuit court committed no error in this case in deciding that the children of Mrs. Glinn were entitled to the slaves and money in question devised from the estate of Celia Smith, deceased.

The remaining question is as to the right of German R. Glinn to be compensated for the support of the appellees.

There is no doubt that the law imposes on a father the duty of supporting his children during their minority if he is of ability to do so, although they may have property of their own.

This proposition is not controverted by the counsel for the appellant. But it is contended that German R. Glinn was not able to support his children without the assistance of the use and profits of the slaves in question derived from the estate of Celia Smith, deceased. While on the other hand it is insisted that he possessed the means to support his children, and that as he did so without ever having in his lifetime made any charge for it, his personal representative can not now, after his death, be allowed to make the charge against them, although they had property of their own, but that his estate is now liable to them for the hires of the slaves and the money recovered by him from Celia Smith's executor, with compound interest on it and on the conjectural hires, in the same manner as if he had been regularly appointed their guardian, and had hired the same in that character ; and that whatever might have been his inability to support them, as he made no charge against them in his lifetime, no matter from what cause, such a charge cannot be raised against them after his death, and the case of Evans v. Pearce & als., 15 Gratt. 513, is relied on as controlling authority on this point. In that case the father held his son's property; there was no question made either as to the right of the prop-

erty or the ability of the father to support his son.    And the court then very justly held him to account for the same as guardian *de facto* of his son.

In this case the father was in very moderate circumstances, had a pretty large family to support (consisting, among others, of the appellees), and another set of children by a second marriage; was himself physically unable to labor, and must have been pretty much strained, even with the aid of the labor of the slaves, to meet the expenses of so large a family.    He certainly could not, with the burdens upon him, have had much, if any surplus, to have laid up at the end of each year.    Besides, in this case the father *bona fide* claimed the property as his own, and held it under a well-grounded belief that it was his, and used and expended the profits derived from it from time to time, as they arose, under the belief that he was using and expending his own money.    Under these circumstances it seems to me that the father ought not to be charged as guardian.    If any other person had had possession of the property under a claim of right, upon recovery of the property he would not have been charged compound interest or interest on conjectural hires, and I cannot see any reason why the father, who held the property in good faith under an honest belief that it was his own, should, merely because he was the father, be put in a worse condition than if he had been a stranger.

In delivering the opinion of the court in Evans v. Pearce & als., Judge Robertson says : "The court will look with liberality to the circumstances of each particular case and to the respective estates of the father and children, and will authorize the income arising from the estates of infants to be applied to their support whenever, under all circumstances, it appears to be proper.    But when the application is not made in advance, and is delayed until after the guardianship

has terminated, the court will not permit it without the clearest proof that justice requires it."

In the case under consideration, the father stands excused for not making such application in advance, because he believed the property in question was his own, and did not believe that his children had any property upon which a charge for their support could be made.

Under all the circumstances of the case, we are of opinion that a part of the hires at least ought to have been applied to the support of the appellees during their minority while they remained with and were supported by their father (one of us thinks all of them ought so to have been applied), and that no interest ought to have been charged on conjectural hires. We all, however, agree, that taking all of the circumstances of the case into consideration, that one-half of the hires at least ought to have been abated as to the shares of the children who remained with and were supported by their father during their minority for such time as they remained with and were so supported by him, and that he should not be charged with interest on conjectural hires.

The case must therefore be reversed with costs and sent back with instructions to reform the accounts heretofore taken in the cause, and for further proceedings to be had according to the principles of this decree.

BARTON, J. I am unable to concur in the opinion as to the estate taken by German R. Glinn, in right of his wife, under the will of her mother.

The words "heirs of the body" are peculiarly words of limitation, and when used, as in this will, following a devise for life to the ancestor, must have their technical effect, unless it appears from the context that they were used in the place of other words, and are construed to designate some-

other class of persons, generally less extensive.    2 Jar. Wills, 307.

I am not satisfied that the context does show this to have been the meaning of the testatrix.    I think that "heirs of the body," in their technical sense, was exactly what she meant, though she probably did intend that they should not have their technical effect—that the estate created by their use should be deprived of its legal incidents.

I think that Mrs. Glinn, by virtue of the devise to her for life, with remainder to the "heir or heirs of her body," took an estate tail converted into an estate in fee, which was liable to be defeated by her dying without such heirs living at the time of her death, to which estate her husband became entitled by his marital rights.

I concur in the opinion just read, with that exception.

McLAUGHLIN, J., concurred in the opinion of WING-FIELD, P.

Decree affirmed in part and reversed in part.